UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST LEE COX, Jr., | No. 2:20-cv-1295 DB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| VASUKI DARAM, et al., | |
| Defendant. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants were deliberately indifferent to his serious medical needs when they prevented him from using his continuous positive airway pressure ("CPAP") machine. Before the court is plaintiff's motion for a temporary restraining order. For the reasons set forth below, this court recommends plaintiff's motion be denied.

**BACKGROUND**

Plaintiff is an inmate at Mule Creek State Prison ("MCSP"). He initiated this action on June 29, 2020 by filing a motion for a temporary restraining order. (ECF No. 1.) This court denied the motion without prejudice and instructed plaintiff to file a complaint. (ECF No. 4.) On July 27, 2020, plaintiff filed a complaint. (ECF No. 5.)

////

////

1

Plaintiff alleges that he was prescribed a CPAP machine to treat his sleep apnea. Sleep apnea causes him to stop breathing while sleeping. Plaintiff also suffers from prostate cancer, for which he is currently being treated with chemotherapy, and hypertension.

Plaintiff further alleges that on April 10, 2020, officials at MCSP removed the electrical cord plaintiff requires to run his CPAP machine. Plaintiff was informed that MCSP officials had determined that the use of CPAP machines could contribute to the spread of the COVID-19 virus. A couple days later, the MCSP warden issued a statement that inmates who require CPAP machines would be moved to single cells so that they could continue to use them.

Plaintiff requested he be permitted to continue to use his CPAP machine. On May 6, plaintiff was interviewed by defendant Daram regarding his request. Daram informed him that he met the criteria to continue to use the CPAP machine. However, two days later, Daram informed plaintiff that a new policy specified that only inmates with congenital heart defects would be moved to single cells and permitted to use CPAP machines. Plaintiff contends defendants Bal, Williams, and Patterson are responsible for the policy restricting CPAP use to inmates with congenital heart defects at MCSP.

Plaintiff stated that he was filing a renewed motion for a temporary restraining order along with his complaint. Because it did not appear to have been included with plaintiff's filing, this court construed plaintiff's initial motion for a temporary restraining order as renewed. This court permitted defendants an opportunity to respond to the motion. (ECF No. 9.) They have done so. (ECF No. 11.)

**TEMPORARY RESTRAINING ORDER**

Plaintiff moves for an order requiring defendants to permit him to use a CPAP machine immediately. Defendants oppose plaintiff's motion. They argue that plaintiff's sleep apnea is mild, that they must balance the needs of CPAP users with the need to restrict the spread of COVID-19, and that plaintiff will not suffer irreparable harm if his motion is denied.

**I. Legal Standards**

A party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

1 balance of equities tips in his favor, and that an injunction is in the public interest." Winter v.
2 Natural Res. Def. Council, 555 U.S. 7, 20 (2008).  The propriety of a request for injunctive relief
3 hinges on a significant threat of irreparable injury that must be imminent in nature.  Caribbean
4 Marine Serv. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits.  See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2947 (3d ed. 2014).  Implicit in this required showing is that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial.

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  Further, an injunction against individuals not parties to an action is strongly disfavored.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment . . . resulting from litigation in which he is not designated as a party . . . .")

**II. Discussion**

    **A. Likelihood of Success on the Merits**

Plaintiff contends that defendants' adherence to a prison policy limiting the use of CPAP machines to inmates who also have heart problems amounts to deliberate indifference to his

////

3

serious medical need – sleep apnea. He argues that a doctor has prescribed the use of a CPAP machine and defendants' actions amount to interference with the doctor's orders.

Plaintiff also shows that he has other serious health problems. However, he does not explain how those health problems are related to his need for a CPAP machine. In fact, plaintiff's motion shows that he may be seeking single-cell status for another reason. Plaintiff argues that he is at greater risk for COVID-19 based on the fact he is undergoing chemotherapy for prostate cancer. (ECF No. 1 at 3.)

Defendants argue that plaintiff cannot demonstrate he is likely to succeed on the merits of his claims because he does not meet the standards set out for CPAP use at this time. Defendants provide a copy of the policy issued on April 8, 2020 by California Correctional Health Care Services ("CCHCS") regarding the use of medical treatments, including CPAP machines, that generate aerosols. Based on the risk that use of these treatments may increase the risk of aerosolizing and thus spreading the COVID-19 virus, CCHCS set out standards for limiting non-essential use of these treatments. The CCHCS standards limit use of CPAP machines to those "with severe sleep apnea and comorbidities such as significant cardiomyopathy with history of arrhythmias and short-term discontinuation of []CPAP not considered safe." (ECF No. 11-1 at 6-7.)

Defendants present the declaration of Dr. S. Aung, a physician at MCSP. Dr. Aung explains that people with sleep apnea are generally diagnosed as having mild, moderate, or severe conditions. The Apnea Hypopnea Index (AHI) index and a patient's symptoms are used to determine the severity level. An index between 5 and 14 indicates mild sleep apnea. (ECF No. 11-1 at 2.)

Dr. Aung has been plaintiff's primary care physician since February 2019. Plaintiff's medical records show that his most recent sleep apnea study was conducted in January 2018, at which time plaintiff was given an index of 5.1. Dr. Aung opines that based on plaintiff's symptoms and low index score, he has only mild sleep apnea. Dr. Aung concludes that plaintiff "does not have a serious medical need for a C-PAP machine that outweighs the risks presented under COVID-19." (ECF No. 11-1 at 3.)

1    In addition, Dr. Aung provides copies of progress notes for plaintiff's May 6 and May 8
2  appointments with Dr. Daram.  Contrary to plaintiff's assertions that Dr. Daram concluded on
3  May 6 that plaintiff qualified for continued use of a CPAP machine, the notes for the May 6
4  appointment show that based on the CCHCS standards, Dr. Daram concluded that plaintiff did
5  not qualify.  (ECF No. 11-1 at 11.)

6    To establish that defendants were deliberately indifferent to his serious medical needs in
7  violation of the Eighth Amendment, plaintiff must prove "acts or omissions sufficiently harmful
8  to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.  An
9  Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical
10  need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d
11  1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d
12  1133 (9th Cir. 1997) (en banc).

13    A medical need is serious "if the failure to treat the prisoner's condition could result in
14  further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974
15  F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include
16  "the presence of a medical condition that significantly affects an individual's daily activities." Id.
17  at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the
18  objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S.
19  825, 834 (1994).

20    If a prisoner establishes the existence of a serious medical need, he must then show that
21  prison officials responded to the serious medical need with deliberate indifference. See Farmer,
22  511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny,
23  delay, or intentionally interfere with medical treatment, or may be shown by the way in which
24  prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th
25  Cir. 1988).

26    Based on the information before the court, plaintiff fails to show he is likely to succeed on
27  the merits of his claim.  He does not show that Dr. Daram's medical care, or the decisions of the
28  other defendants to abide by the CCHCS standards, was indifferent to plaintiff's needs.  Rather,

the evidence currently before the court shows that defendants have considered any risks to plaintiff from temporary discontinuation of his CPAP machine and are balancing any risks against the need to protect the prison population from the spread of COVID-19.

**B. Likelihood of Irreparable Harm**

Plaintiff contends he could die without his CPAP machine because he might not resume breathing after an episode of sleep apnea. Plaintiff does not demonstrate any likelihood that he will not resume breathing. Dr. Aung states that the most common side effects experienced by those with mild sleep apnea are daytime sleepiness and increased risk of hypertension. (ECF No. 11-1 at 2.) Nothing before the court shows that either of these risks is irreparable. This factor also lands on the side of denial of plaintiff's motion.

**C. Balance of Equities**

The risk of transmission of the COVID-19 virus through aerosols should be of great concern to those responsible for the health of prison inmates and staff. See https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. CCHCS's determination that CPAP machines may contribute to the airborne spread of the virus and attempt to limit the use of those machines appears to recognize those risks to the prison population as a whole. Further, this court recognizes that MCSP may not have a sufficient number of single cells to house every inmate with a CPAP machine. Dr. Aung's declaration indicates that those with mild sleep apnea may suffer some symptoms without the use of a CPAP machine. There is no showing that those symptoms are, if managed, life threatening. On balance, the equities favor denial of plaintiff's motion.

For the foregoing reasons, the Clerk of the Court is HEREBY ORDERED to randomly assign a district judge to this case; and

IT IS RECOMMENDED that plaintiff's motion for a temporary restraining order (ECF No. 1) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, either party may file written objections

with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 14, 2020

<i>/s/ Deborah Barnes</i><br>
DEBORAH BARNES<br>
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/cox1295.tro fr