UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST LEE COX, JR., <br><br>  Plaintiff, <br><br> v. <br><br> VASUKI DARAM, et al., <br><br>  Defendants. | No. 2:20-cv-1295 KJM DB P <br><br> ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that defendants violated the Eighth Amendment, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by refusing to permit him to use his continuous positive airway pressure ("CPAP") machine and by housing him with inmates who tested positive for COVID-19. Before the court are: (1) defendants' motion to dismiss the second amended complaint for plaintiff's failure to exhaust his administrative remedies before filing this lawsuit; (2) plaintiff's motions for a preliminary injunction; and (3) plaintiff's motion to submit evidence. For the reasons set forth below, this court grants plaintiff's motion to submit evidence and recommends defendants' motion to dismiss be granted and plaintiff's motion for a preliminary injunction be denied.

////

////

# BACKGROUND

**I. Allegations in the Second Amended Complaint**

Plaintiff is an inmate at Mule Creek State Prison ("MCSP"). He seeks relief from four defendants: (1) Dr. Vasuki Daram; (2) I. Bal, Chief Medical Executive, MCSP; (3) M. Williams, Associate Warden of Health Care, MCSP; and (4) T. Patterson, Chief Executive Officer, MCSP. The case is proceeding on plaintiff's second amended complaint ("SAC"). (ECF No. 38.)

Plaintiff alleges that he suffers from the following serious medical conditions: (1) prostate cancer, for which he is receiving chemotherapy; (2) hypertension, for which he is prescribed medication; and (3) sleep apnea, for which he is prescribed a CPAP machine. Plaintiff alleges that the first two conditions, and their treatments, render him immunocompromised and that all three conditions put him at greater risk for serious complications if he contracts COVID-19.[1]

Plaintiff contends that defendants have denied him the use of his CPAP machine since the Spring of 2020 based on a notice from the Chief Medical Officer of the California Department of Corrections and Rehabilitation ("CDCR") that the use of CPAP equipment greatly increases the spread of COVID-19. CPAP equipment has been only permitted for inmates who required one and also had a congenital heart defect. Plaintiff further contends that defendants, based on a policy at MCSP of housing inmates who had tested positive for COVID-19 with inmates who had tested negative, housed plaintiff with COVID-positive inmates despite their knowledge that plaintiff was immunocompromised. In early 2021, plaintiff contracted COVID-19.

////

////

---

[1] COVID-19 is described by the U.S. Center for Disease Control and Prevention ("CDC") as "a dangerous disease caused by a virus discovered in December 2019 in Wuhan, China. It is very contagious and has quickly spread around the world." https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19/basics-covid-19.html. "The court may take judicial notice of the CDC information which is not subject to reasonable dispute, in part, because it is readily determined from a source the accuracy of which cannot reasonably be questioned (i.e., the CDC website)." Dubrin v. Cty. of San Bernardino, No. EDCV 15-589 CJC(JC), 2017 WL 8940181, at *21 n. 14 (C.D. Cal. Sept. 7, 2017) (citing Fed. R. Evid. 201(b)(2), (c)(1); Fed. R. Evid. 201(d)), rep. and reco. adopted, 2017 WL 4339645 (C.D. Cal. Sept. 29, 2017); see also United States v. Smith, __ F. Supp. 3d __, No. 2:98-cr-0009 KJM CKD, 2021 WL 1890770, at *2 n.3 (E.D. Cal. May 11, 2021) (citing Dubrin, 2017 WL 8940181, at *21 n. 14).

Plaintiff seeks a preliminary injunction requiring defendants to allow him to use a CPAP machine and requiring that he be single-celled to protect him from contracting COVID-19 a second time. He also seeks compensatory and punitive damages.

On screening, this court found plaintiff stated § 1983 claims for deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment and for violations of the ADA and RA. (ECF Nos. 19, 40.)

**II. Procedural Background**

Plaintiff initiated this action by filing a motion for a temporary restraining order ("TRO"). (ECF No. 1.) The court denied plaintiff's motion without prejudice and ordered plaintiff to file a complaint. (ECF No. 4.) On July 27, 2020, plaintiff filed a complaint. (ECF No. 5.) On July 31, 2020, this court deemed plaintiff's motion for a TRO renewed and ordered defendants to respond. (ECF No. 7.) The court denied plaintiff's motion for a TRO. (ECF No. 13, 18.)

On April 16, 2021 plaintiff filed his SAC and another motion for preliminary injunctive relief. (ECF No. 38.) Defendants filed an opposition to the motion. (ECF No. 42.)

On June 3, defendants filed the present motion to dismiss. (ECF No. 45.) Plaintiff filed an opposition (ECF No. 46) and defendants filed a reply (ECF No. 47). Recently, plaintiff again filed a motion for a preliminary injunction and also filed a motion to submit evidence. (ECF Nos. 48, 49.)

**MOTION TO DISMISS**

Defendants move to dismiss the SAC based on plaintiff's failure to exhaust his administrative remedies before filing this suit. This court finds plaintiff did fail to exhaust those remedies and recommends this action be dismissed without prejudice.

**I. Legal Standards**

**A. Standard of Review on Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th

Cir. 2019) (citation omitted). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Naruto v. Slater, 888 F.3d 418, 421 (9th Cir. 2018) (citing Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001)). However, the court need not accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell, 266 F.3d at 988 (citations omitted). Neither must the court "assume the truth of legal conclusions cast in the form of factual allegations." Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008) (citation omitted). The court may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted).

### B. Legal Standards for Exhaustion of Administrative Remedies

#### 1. PLRA Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'— rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune,

4

568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'" (quoting Jones, 549 U.S. at 218).)

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

The Supreme Court has identified three situations in which administrative remedies are "unavailable" within the meaning of the statute. First, an "administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (citing Booth, 532 U.S. at 736, 738). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 1859. Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the administrative remedy is effectively unavailable. Id. at 1860 (citing Woodford, 548 U.S. at 102). "[T]he ultimate burden of proof," however, never leaves the defendant. Albino, 747 F.3d at 1172.

### 2. California's Inmate Appeal Process

California regulations distinguish prisoners' health care appeals from other types of grievances. Health care appeals are governed by Title 15 of the California Code of Regulations, Article 5, § 3999.225, et seq. The health care grievance process provides an administrative remedy "for review of complaints of applied health care policies, decisions, actions, conditions, or omissions that have a material adverse effect on [prisoners'] health or welfare." Cal. Code Regs. tit. 15, § 3999.226(a).

The regulations provide for two levels of review for a health care appeal. First, an inmate who files a health care grievance will receive review at the institutional level. Cal. Code Regs. tit. 15, § 3999.226(a)(1). In submitting a grievance, an inmate is required to "document clearly and coherently all information known and available to him or her regarding the issue" and identify the staff member involved. Id. § 3999.227(g). The appeal should not involve multiple issues that do not derive from a single event. Id. § 3999.227(e). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the action or decision being appealed or from "[i]nitial knowledge of the action or decision being grieved." Id. § 3999.227(b).

////

If a prisoner is "dissatisfied with the institutional level health care grievance disposition, the grievant may appeal the disposition by completing and signing Section B of the CDCR 602 HC and submitting the health care grievance package [for headquarters' level review] to HCCAB." Cal. Code Regs. tit. 15, § 3999.229(a). "The headquarters' level review constitutes the final disposition on a health care grievance and exhausts administrative remedies." Id. § 3999.230(h). The exhaustion requirement is echoed in another section: "Health care grievances are subject to a headquarters' level disposition before administrative remedies are deemed exhausted pursuant to section 3999.230. A health care grievance or health care grievance appeal rejection or withdrawal does not exhaust administrative remedies." Id. § 3999.226(g).

**II. Analysis**

Defendants argue that plaintiff admitted in his complaint that he had not exhausted his administrative remedies before filing suit. Plaintiff does not dispute that fact.

In his original complaint, filed July 27, 2020, plaintiff stated that he had a "pending" appeal, MCSP HC 20000794, regarding his ADA and RA claims and a second "pending" appeal, MCSP HC 20000639, regarding his Eighth Amendment claims. (ECF No. 5 at 2.) The primary focus of plaintiff's complaint was the denial of the use of his CPAP machine. This is reflected in the copy of plaintiff's appeal no. MCSP HC 20000639 provided by defendants. (ECF No. 45-2 at 5-10.)

In his SAC, filed April 16, 2021, plaintiff stated that appeal no. MCSP HC 20000639 was resolved at the headquarters level on October 16, 2020. (ECF No. 38 at 12; see also ECF No. 45-2 at 5-6.[2]) Plaintiff also stated that he had raised his claims regarding COVID-19 in appeal no.

---

[2] Defendants ask the court to take judicial notice of plaintiff's appeal nos. MCSP HC 20000639 and MCSP HC 21000453. (See ECF No. 45-2.) Plaintiff does not dispute defendants' assertion that these are correct copies of his appeals. Further, the copies confirm plaintiff's statements that MCSP HC 20000639 was finally resolved on October 16, 2020 (ECF No. 45-2 at 5-6) and that MCSP HC 21000453 was submitted in February 2021 (see ECF No. 45-2 at 26) and, at the time plaintiff filed his SAC in April, he had not yet received an institutional level response (ECF No. 45-2 at 23 (institutional level response dated May 14, 2021)). Based on the absence of any dispute regarding these documents, the court may take judicial notice of them. See Fed. R. Civ. P. 201(b); Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts noticed are not "subject to reasonable dispute." (internal citations omitted).)

1  MCSP HC 21000453 and that this appeal was then "pending." In a more recent filing, plaintiff
2  shows that he received a headquarters level response to that appeal on July 28, 2021. (ECF No.
3  49 at 6-7.) In his SAC, plaintiff does not mention appeal no. MCSP HC 20000794. Because
4  petitioner stated it was pending when he filed his original complaint in July 2020, it could not
5  have been fully exhausted at that time.

6        There is no dispute that, at the time plaintiff filed his initial complaint in July 2020, he had
7  not fully exhausted his administrative remedies for any of his claims. The court recognizes that
8  the purpose of plaintiff's initial filings was preliminary injunctive relief. While seeking an
9  emergency injunction prior to exhaustion may be an appropriate procedure, once the motion for
10 injunctive relief is resolved, the court must dismiss the action for failure to exhaust. See
11 Stringham v. Beck, No. CIV S 05-0644 FCD GGH, 2008 WL 4145473, at *9 (E.D. Cal. Sept. 3,
12 2008) (After considering plaintiff's motion for emergency injunctive relief, magistrate judge
13 recommended dismissal of action for failure to exhaust. (citing Jackson v. Dist. of Columbia, 254
14 F.3d 262, 267-268 (D.C.Cir.2001)).) rep. and reco adopted, 2008 WL 4472954 (E.D. Cal. Sept.
15 30, 2008); but see Hoffman v. Palagummi, No. 2:16-cv-3030 TLN EFB P, 2019 WL 582353, at
16 *4 (E.D. Cal. Feb. 13, 2019) ("[T]he PLRA makes no provision for an 'imminent danger' or other
17 emergency exception to its exhaustion requirements." (citing Booth, 532 U.S. at 741 n.6; and
18 Porter, 534 U.S. at 532)), rep. and reco. adopted, 2019 WL 2464599 (E.D. Cal. June 13, 2019). ..

19       Case law is clear that a prisoner's § 1983 suit filed prior to the full exhaustion of
20 administrative remedies must be dismissed. See Booth, 532 U.S. at 738 (A plaintiff is required to
21 exhaust administrative remedies before a § 1983 claim may be entertained.); Vaden v.
22 Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (The court must dismiss a suit where the
23 plaintiff has not completed the exhaustion requirement.). It is equally clear that exhausting
24 administrative remedies during the course of the federal proceedings does not satisfy the PLRA
25 exhaustion requirement. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) ("[A] prisoner
26 does not comply with this requirement by exhausting available remedies during the course of the
27 litigation." (internal citations omitted).)
28 ////

Plaintiff argues that he need not exhaust his COVID-19 claims because he has been subjected to an ongoing violation of his rights. Regardless of whether this argument applies in the exhaustion context, it would be inapplicable here because none of plaintiff's claims were exhausted prior to filing suit. Therefore, his COVID-19 claims cannot be deemed exhausted based on properly exhausted claims.

For these reasons, this court recommends this action be dismissed without prejudice for plaintiff's failure to exhaust his administrative remedies prior to filing this action. Plaintiff may initiate a new action if he wishes to pursue relief. The Ninth Circuit has recognized that dismissing an action for failure to exhaust "may, in some circumstances, occasion the expenditure of additional resources on the part of the parties and the court[.]" McKinney, 311 F.3d at 1200. However, the court noted that "it seems apparent that Congress has made a policy judgment that this concern is outweighed by the advantages of requiring exhaustion prior to the filing of suit." Id. (citations omitted).

## MOTIONS FOR PRELIMINARY INJUNCTION

**I. Background**

Plaintiff initiated this action by filing a motion for an emergency injunction requiring prison officials to permit him to use his CPAP machine. (ECF No. 1.) When plaintiff filed a complaint, he renewed that motion. (See ECF Nos. 5, 7.) The court denied plaintiff's motion. (ECF Nos. 13, 18.) The court held that plaintiff failed to show defendants were deliberately indifferent to his medical needs. Rather, plaintiff's allegations and evidence presented by defendants demonstrated that defendants considered plaintiff's health but determined, given plaintiff's mild sleep apnea, that risks to the prison population from COVID-19 outweighed plaintiff's need to use the CPAP machine. (See ECF No. 13 at 5-6.) The court further found that plaintiff did not show a likelihood he would suffer irreparable injury if he was denied use of the CPAP machine. (Id. at 6.)

In his SAC, plaintiff again requests preliminary injunctive relief. (ECF No. 38.) Plaintiff reiterated his arguments on the merits of his case and for an emergency injunction in his opposition to defendants' motion to dismiss. (ECF No. 46.) In recent filings, plaintiff seeks to

9

add evidence in support of his motion. (ECF Nos. 48, 49.[3]) Defendants filed an opposition to the motion contained in the SAC. (ECF No. 42.) This court finds further response from defendants on the injunction issues unnecessary.

**II. Legal Standards**

A party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

The principle purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits. See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2947 (3d ed.). Implicit in this required showing is that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial.

In cases brought by prisoners involving conditions of confinement, any preliminary injunction must be narrowly drawn, extend no further than necessary to correct the harm the court

////

---

[3] Because plaintiff moves to submit evidence only regarding his requests for preliminary injunctive relief, this court will consider that evidence. Cf., Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1132 (9th Cir. 2014) (finding of irreparable harm for purposes of injunction must be based on evidence, not on conclusory statements).

finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

## III. Analysis

Plaintiff seeks two things: use of his CPAP machine and a single cell. He first argues that defendants are endangering his health by depriving him of his CPAP machine. Plaintiff argues that he requires his CPAP machine for several reasons: (1) because his blood pressure has risen in the year[4] that he has not used it; (2) because he is not sleeping "normally," which is causing him to be unable to participate in prison programs; and (3) because he has "central" rather than "obstructive" sleep apnea. (ECF No. 38 at 7, 14; ECF No. 46 at 4-5.)

Plaintiff's second argument is that he requires a single cell because of the risk he may contract COVID-19 again. (ECF No. 38 at 8-9, 14.) Plaintiff argues that the chemotherapy he is undergoing compromises his immune system, causing him to be at greater risk of contracting COVID-19 than other inmates who are not undergoing that treatment. Plaintiff explains that he is housed with many other inmates which increases the likelihood he may be exposed to COVID-19.

Assuming, that consideration of plaintiff's motion for preliminary injunctive relief is appropriate prior to exhaustion, this court will recommend both injunctions be denied.

### A. Injunction Requiring CPAP Use

#### 1. Likelihood of Success on the Merits

In the court's denial of plaintiff's first motion for an injunction, the court found plaintiff failed to show that defendants were deliberately indifferent to his need for a CPAP machine. This court again makes that finding for purposes of the emergency injunction plaintiff seeks pending resolution of his Eighth Amendment claims. Plaintiff does not show that defendants have been, on balance, deliberately indifferent to his need for a CPAP machine because plaintiff was

////

////

---

[4] Plaintiff identifies the year as 2019, which is prior to the confiscation of his CPAP machine in the Spring of 2020. (See ECF No. 38 at 7.) However, it is apparent that plaintiff meant to identify the year as 2020. In their declaration, plaintiff's primary care physician, Dr. Aung, describes an increase in plaintiff's blood pressure during 2020. (See ECF No. 42-1, ¶ 23.)

diagnosed with only mild sleep apnea[5] and it is undisputed that the use of CPAP machines contributes to the spread of COVID-19.

That said, evidence submitted by the parties shows that plaintiff may have a better case on the merits than the court found previously. Evidence provided by the parties indicates defendants may not have considered all of plaintiff's health problems in making the determination that plaintiff's CPAP machine use was not necessary given the risks associated with CPAP machines and the spread of COVID-19.

The record shows conflicts between some of plaintiff's contentions and defendants' responses. First, plaintiff argues that his blood pressure has risen significantly during the year since his CPAP machine was confiscated. He shows that the dose of blood pressure medication he is currently prescribed is four times higher than he was prescribed when he was using the CPAP machine. (See ECF No. 46 at 10.) Dr. Aung makes somewhat conflicting statements on that point. Dr. Aung first declares that "[e]ven when asymptomatic, mild sleep apnea is associated with increased risk of hypertension, and this becomes a stronger association at younger ages." (ECF No. 42-1, ¶ 6.) Later in the declaration, Dr. Aung does not dispute that plaintiff's blood pressure has increased. However, they simply state, without explanation, that the increase in blood pressure is "expected" due to the increase in plaintiff's age. (Id., ¶ 23.) Dr. Aung does not explain whether the blood pressure increase could also be due to the discontinuation of plaintiff's CPAP machine.

A second conflict is the parties' positions about whether plaintiff was prescribed a CPAP machine on a permanent basis or on a trial basis. Plaintiff provides documents from 2020 and 2021 entitled "ADA/Effective Communication Patient Summary" which identify plaintiff's permanent Durable Medical Equipment as including a CPAP machine and CPAP supplies. (ECF No. 46 at 19; ECF No. 49 at 19.) Defendants consistently contend that plaintiff was only provided a CPAP machine on a trial basis. (See, e.g., ECF No. 42-1, ¶ 16.)

---

[5] Plaintiff has been diagnosed with mild sleep apnea. However, his last sleep study was conducted over three and a half years ago. (See ECF No. 48 at 20 (results of Jan. 2018 sleep study).) Dr. Aung declares that plaintiff is being scheduled for another sleep study. (ECF No. 42-1, ¶ 22.) The court encourages Dr. Aung to pursue further testing for plaintiff.

### 2. Imminent Irreparable Injury

Despite this court's concerns regarding the conflicting evidence, and even assuming all of plaintiff's assertions are true, plaintiff has not shown, at this point, that the risks he faces from the absence of his CPAP machine require emergency intervention by the court. There is no dispute that the evidence presented shows mild sleep apnea. Further, with the exception of the increase in blood pressure, which plaintiff does not dispute is controlled by medication, plaintiff shows only that he does not sleep well. The declarations of other inmates describing plaintiff's sleep problems are not medical evidence that those problems are related to the discontinuation of the CPAP machine or that plaintiff will suffer an irreparable injury without use of a CPAP machine. Further, plaintiff's statement that his lack of normal sleep has resulted in his inability to participate in programs is unexplained and unsupported.

### 3. Balance of Hardships

Given the highly contagious nature of COVID-19, and its potential severity if contracted,[6] defendants have an important interest in reducing the spread of COVID-19. This is especially true in the prison context where inmates are celled in close proximity to one another. Cf. Sanford v. Eaton, No. 1:20-cv-0792 BAM PC, 2021 WL 1172911, at *7 (E.D. Cal. Mar. 29, 2021) ("'by their very nature, prisons are confined spaces unsuited for social distancing.'" (quoting Evdokimow v. Doll, No. 4:21-CV-00261, 2021 WL 767554, at *6 (M.D. Pa. Feb. 26, 2021)). Plaintiff does not dispute that CPAP machines contribute to the spread of COVID-19.

Plaintiff's interest in the use of his CPAP machine does not rise to the same level of hardship. While this court is sympathetic to plaintiff's fears that the consequences of not using the CPAP machine could be dire, the evidence does not support those fears. Plaintiff does not demonstrate that use of a CPAP machine is necessary for his mild sleep apnea and that it outweighs the prison's need to protect, as much as possible, all inmates from a serious disease.

This court recommends plaintiff's motion for an injunction requiring defendants to permit him to use his CPAP machine should be denied without prejudice.

---

[6] See fn. 1, supra.

### B. Injunction Requiring Single Cell

Plaintiff argues that he should be single-celled to reduce the chances that he will contract COVID-19 again. Plaintiff contracted COVID-19 in January 2021. He contends that he experienced a month of "extreme suffering" that included "difficulty breathing, pain from headaches, a runny nose, loss of strength, powerful sneezing, coughing, memory and concentration loss." (ECF No. 38 at 10.)

Plaintiff argues that his immune system is compromised by the regular and ongoing chemotherapy treatments and by his hypertension. Therefore, according to plaintiff, he is more likely to contract COVID-19 and more likely to suffer serious symptoms, as he did in January.

Defendants contend that plaintiff's prostate cancer is "controlled" with medication and does not make him immunosuppressed. (ECF No. 42-1, ¶ 18.). This court finds that statement misleading. Plaintiff is not contending that prostate cancer makes him immunocompromised. Rather, he contends that ongoing chemotherapy suppresses his immune system. Plaintiff presents information from the American Cancer Society that chemotherapy suppresses immune systems. (ECF No. 46 at 31.) Defendants do not address that contention. Plaintiff also presents information from the National Cancer Institute that cancer sufferers are more likely to suffer severe illness if they contract COVID-19. (ECF No. 46 at 36.)

The primary issue plaintiff does not address is the likelihood that he will contract COVID-19 a second time. According to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare.[7]" Even assuming plaintiff's immune system is significantly suppressed due to his chemotherapy, there is no evidence that it is likely plaintiff will contract COVID-19 a second time, much less anytime soon. Plaintiff fails to demonstrate a "significant threat of irreparable injury that must be imminent in nature." Caribbean Marine Serv. Co., 844 F.2d at 674.

Plaintiff's emergency motion to be single-celled due to his susceptibility to contracting COVID-19 should be denied.

---

[7] https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html

14

For the foregoing reasons, IT IS HEREBY ORDERED that plaintiff's motion to submit evidence in support of his request for preliminary injunctive relief (ECF No. 49) is granted.

Further, IT IS RECOMMENDED that:

1. Defendants' motion to dismiss for plaintiff's failure to exhaust his administrative remedies (ECF No. 45) be granted without prejudice to plaintiff's right to file a new suit on the same grounds.

2. Plaintiff's motions for preliminary injunctive relief (ECF Nos. 38, 48) be denied without prejudice to their renewal in a separate action.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 18, 2021

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DB Prisoner Inbox/Civil Rights/S/cox1295.mtd exh